T.C. Memo. 2011-82

UNITED STATES TAX COURT

AGRIPINA D. SMITH AND
JAMES F. SMITH, JR., ET AL.,[1] Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket Nos. 11580-08, 11607-08,   Filed April 6, 2011.
        11614-08, 11909-08.

James F. Smith, Jr., Agripina D. Smith, Peter A. Joseph,

Sandra K. Joseph, Edward Kelly, and Candace R. Kelly, pro se.

<u>Catherine L. Campbell</u>, for respondent.

---

[1]Cases of the following petitioners are consolidated herewith:  James F. Smith, Jr., and Agripina Smith, docket No. 11607-08; Peter A. and Sandra K. Joseph, docket No. 11614-08; and Edward and Candace R. Kelly, docket No. 11909-08.

MEMORANDUM FINDINGS OF FACT AND OPINION

MORRISON, <u>Judge</u>:  These consolidated cases involve three members of the tribal council of the Nooksack Indian tribe located in Washington State.  The issues for decision are:

• for income tax purposes, the portion of the tribal-council compensation received by Agripina Smith in 2003, 2004, and 2005, by Sandra Joseph in 2004 and 2005, and by Candace Kelly in 2004 and 2005, that was derived from the fishing rights-related activities of the tribe;

• whether the petitioners are liable for self-employment tax on the compensation received by Agripina Smith in 2003, 2004, and 2005, by Sandra Joseph in 2004 and 2005, and by Candace Kelly in 2004 and 2005 for services as members of the tribal council;

• whether the IRS[2] properly disallowed the vehicle-expense deductions claimed by Agripina Smith and James Smith for 2003, 2004, and 2005; and

---

[2]For simplicity, we refer to the respondent, the Commissioner of Internal Revenue, as the IRS.

• whether Candace Kelly and Edward Kelly are each liable for the additions to tax under section 6651(a)(1) and (2)[3] for their failures to file tax returns and pay taxes in 2005.

FINDINGS OF FACT

1.  The Nooksack Indian Tribe

The Nooksack Indian tribe is governed by a tribal council. Each year, the Nooksack Indian tribe spent a portion of its total operating expenses on fishing-related activities. The amounts are set forth in the table below:

|  | 2003 | 2004 | 2005 |
|---|---|---|---|
| Expenses of fishing-related activities | $1,749,969 | $1,521,659 | $1,617,835.00 |
| Total operating expenses | $14,683,430 | $13,994,701 | $16,675,927.75 |
| Expenses of fishing-related activities as percentage of total operating expenses | 11.918% | 10.873% | 9.702% |

The tribe administered tribal ceremonies. The costs of administering the tribal ceremonies are reflected in the total operating expenses but not in the expenses of fishing-related activities. One of the ceremonies was the annual salmon

_____

[3]All section references are to the Internal Revenue Code (Code), as amended and in effect for 2003, 2004, and 2005, and all Rule references are to the Tax Court Rules of Practice and Procedure.

ceremony.  The purpose of this ceremony was to show respect for God, the salmon fish, and the ecosystem.

2.  Agripina Smith and James Smith

During the years 2003, 2004, and 2005 Agripina Smith was a member of the tribal council of the Nooksack Indian tribe.  She was also finance director for the Nooksack Indian tribe.  She received compensation for her service on the tribal council of $28,000 in 2003, $45,500 in 2004, and $45,500 in 2005.  Agripina Smith and her husband, James Smith, filed joint income tax returns for the tax years 2003, 2004, and 2005.  On these returns they did not include in income Agripina Smith's compensation for services as a member of the tribal council.  James Smith ran a tree service as a sole proprietorship.  The Smiths claimed deductions for this business on Schedules C, Profit or Loss From Business.  The deductions related to vehicles are shown in the table below:

Vehicle Expenses of Tree-Service Business
Deducted by Joseph and Agripina Smith on Schedule C

| Type of vehicle expense | 2003 | 2004 | 2005 |
|---|---|---|---|
| Car and truck | $19,800 | $9,375 | $10,164 |
| Depreciation | 662 | -0- | 3,250 |
| Repairs and maintenance | 5,200 | 7,950 | 3,200 |
| Total | $25,662 | $17,325 | $16,614 |

The amounts that the Smiths deducted for car-and-truck expenses ($19,800 for 2003, $9,375 for 2004, and $10,164 for 2005) were

standard vehicle expense allowances computed with reference to the standard mileage rate. For the same vehicles for which they deducted the standard mileage rate, the Smiths also claimed deductions for "depreciation" and "repairs and maintenance".

The IRS issued a deficiency notice to the Smiths for 2003 determining a tax deficiency of $7,234. The notice determined that the taxable portion of Agripina Smith's tribal-council compensation was $36,753.[4] Mathematically, $36,753 is equal to $41,717 - (11.9 percent x $41,717). Thus, the determination incorporated two assumptions: first, that her tribal-council compensation was $41,717,[5] and second, that 11.9 percent of this compensation was derived from fishing rights-related activities of the tribe. The notice also determined that $40 in interest was includable in income. The notice determined that the Schedule C expenses should be reduced by $5,862. The notice determined that the Smiths owed $2,459 in self-employment tax, an adjustment resulting from the IRS's determination that the Schedule C deductions should be reduced by $5,862.

The IRS issued a deficiency notice to the Smiths for 2004 and 2005. The deficiency notice determined a deficiency in tax

---

[4]The IRS contends that the notice determined that the taxable portion of her tribal-council compensation was $24,948. This is wrong. The amount in the notice was $36,753.

[5]The IRS now stipulates that Agripina Smith's tribal-council compensation was $28,000.

of $7,988 for 2004.  The notice determined that 10.9 percent of Agripina Smith's tribal-council compensation was derived from fishing rights-related activities of the tribe.  Thus, of Agripina Smith's $45,500 tribal-council compensation for 2004, $40,540 was determined to be includable in income.  The notice determined that Schedule C expenses should be reduced by $7,950 for 2004.  The notice determined that a $29 interest payment was includable in the Smiths' income for 2004.  The notice determined that the Smiths owed $2,533 in self-employment tax for 2004, an adjustment resulting from the IRS's determination that Schedule C expenses should be reduced by $7,950.

For 2005 the deficiency notice determined a deficiency in tax of $9,373.  The notice determined that 9.7 percent of Agripina Smith's tribal-council compensation was derived from fishing rights-related activities of the tribe.  Thus, of Agripina Smith's $45,500 tribal-council compensation for the year, $41,086 was determined to be includable in income.  The notice determined that Schedule C expenses should be reduced by $6,450 for 2005.  The notice determined that the Smiths owed $3,269 in self-employment tax, an adjustment that resulted from the IRS's determination that Schedule C expenses should be reduced by $6,450.  The notice determined that the Smiths were required to include $1,200 in gambling winnings in their income for 2005.

The Smiths filed a Tax Court petition challenging the deficiency notice for 2003. The resulting case was assigned docket No. 11580-08. The Smiths also filed a Tax Court petition challenging the deficiency notice for 2004 and 2005. The resulting case was assigned docket No. 11607-08. The Smiths were residents of Washington State when they filed their petitions. The petitions stated that the Smiths disagreed with the fraction of Agripina Smith's tribal-council compensation that the IRS determined was derived from fishing rights-related activities under section 7873. In its answer, the IRS did not assert that the self-employment income of either Agripina Smith or James Smith should include Agripina Smith's tribal-council compensation. The Smiths have made the following concessions: (1) the $40 in interest income is properly included in their 2003 income, (2) the $29 in interest income is properly included in their 2004 income, and (3) the $1,200 in gambling winnings is properly included in their 2005 income.

3. Sandra Joseph and Peter Joseph

During the years 2004 and 2005 Sandra Joseph was a member of the tribal council of the Nooksack Indian tribe. She received compensation for services as a member of the tribal council of $26,250 for 2004 and $45,500 for 2005. Sandra Joseph and her husband, Peter Joseph, filed joint tax returns for the tax years 2004 and 2005. On these returns they did not include in income

Sandra Joseph's compensation for services as a member of the tribal council.

The IRS issued a deficiency notice to the Josephs determining deficiencies in tax of $5,850 for 2004 and $10,017 for 2005. The notice determined that 10.9 percent of Sandra Joseph's tribal-council compensation in 2004 and 9.7 percent of her tribal-council compensation in 2005 were derived from the fishing rights-related activity of the tribe. Thus, of Sandra Joseph's $26,250 tribal-council compensation for 2004, $23,388 was determined to be includable in income. And of her $45,500 tribal-council compensation for 2005, $41,086 was determined to be includable in income. The IRS determined that the Josephs should include a $21 interest payment in their income for 2005. The notice did not determine that either Sandra Joseph or Peter Joseph was liable for self-employment tax.

The Josephs filed a petition to challenge the deficiency notice. The petition stated that the Josephs disagreed with the portion of Sandra Joseph's tribal-council compensation that the IRS determined was derived from fishing rights-related activities under section 7873. Their case was assigned docket No. 11614-08. At the time they filed the petition they lived in Washington State. The IRS filed an answer. The answer did not assert that either Sandra Joseph or Peter Joseph was liable for self-employment tax.

4.  Candace Kelly and Edward Kelly

    a.  2004

    During 2004 Candace Kelly was a member of the tribal council of the Nooksack Indian tribe.  She received $28,000 in compensation for services as a member of the tribal council.

    Edward Kelly is the husband of Candace Kelly.  The Kellys filed a joint income tax return for the tax year 2004.  On this return they did not include in their income Candace Kelly's compensation for services as a member of the tribal council.

    On February 12, 2008, the IRS issued a deficiency notice to Candace Kelly and Edward Kelly for 2004 determining a deficiency in tax of $4,115.  The notice determined that 10.9 percent of Candace Kelly's tribal-council compensation was derived from the fishing rights-related activities of the tribe.  Thus, of Candace Kelly's $28,000 tribal-council compensation, $24,948 was determined to be included in income.  The deficiency notice did not determine that either Candace Kelly or Edward Kelly owed self-employment tax.

    b.  2005

    During 2005 Candace Kelly continued to be a member of the tribal council of the Nooksack Indian Tribe.  She received $45,500 in compensation for services as a member of the tribal council.  She received $14,220 in taxable wages from the tribe

for services other than services performed as a member of the tribal council. The tribe withheld $1,020 from her wages.

Edward Kelly worked for the Nooksack Indian Tribe during 2005. He was not a member of the tribal council. He received taxable wages of $36,072 from the tribe. The tribe withheld $886 from these wages.

Neither of the Kellys filed a return for the tax year 2005. The IRS filed a substitute return for 2005 for Candace Kelly on January 8, 2008. The substitute return showed an income tax liability of $6,034. The IRS filed a substitute return for 2005 for Edward Kelly on January 8, 2008. The substitute return showed an income tax liability of $6,034. Neither substitute return reflected any liability for self-employment tax.

On April 23, 2008, the IRS issued a deficiency notice to Candace Kelly for 2005 determining a deficiency in tax of $6,034. The notice determined that 9.7 percent of Candace Kelly's tribal-council compensation was derived from fishing rights-related activities of the tribe and thus that $41,086 of her tribal-council compensation was taxable. The IRS determined that Candace Kelly was required to include in income one-half of the following amounts:

- $41,086 in taxable compensation earned by Candace Kelly as a member of the tribal council,

• $14,220 earned by Candace Kelly in wages for services provided to the tribe, and

• $36,072 earned by Edward Kelly in wages for services provided to the tribe.

These three amounts totaled $91,378, and one-half of this total, or $45,689, was included in income. The deficiency notice did not determine a self-employment tax liability. It determined a late-filing addition to tax under section 6651(a)(1) equal to $1,143.23, which is the product of 22.5 percent and $5,081 ($5,081 is the difference between $6,034 and $953 in federal taxes withheld).[6] It determined a late-payment addition to tax under section 6651(a)(2), the amount of which could not be determined at the time the deficiency notice was issued.

On April 23, 2008, the IRS issued a deficiency notice to Edward Kelly for 2005 determining a deficiency in tax of $6,034. The notice determined that 9.7 percent of Candace Kelly's tribal-council compensation was derived from fishing rights-related activities of the tribe and thus that $41,086 of her compensation was taxable. The IRS determined that Edward Kelly was required to include in income one-half of the following amounts:

• $41,086 in taxable compensation earned by Candace Kelly as a member of the tribal council,

_____

[6]The $953 is equal to half of the $1,020 withheld from Candace Kelly's wages, plus half of the $886 withheld from Edward Kelly's wages.

- $14,220 earned by Candace Kelly in wages for services provided to the tribe, and

- $36,072 earned by Edward Kelly in wages for services provided to the tribe.

These three amounts totaled $91,378. One-half of the total, or $45,689, was included in income. The deficiency notice did not determine a self-employment tax liability. It determined a late-filing addition to tax under section 6651(a)(1) equal to $1,143.23, which is the product of 22.5 percent and $5,081 ($5,081 is the difference between $6,034 and $953 in federal taxes withheld). It determined a late-payment addition to tax under section 6651(a)(2), the amount of which could not be determined at the time the deficiency notice was issued.

c. Petition

On May 12, 2008, Candace Kelly and Edward Kelly filed a petition challenging the deficiency notice for 2004 and the deficiency notices for 2005. They lived in Washington State when they filed the petition. The petition stated that the Kellys disagreed with the fraction of Candace Kelly's tribal-council compensation allocated to fishing rights-related activities under section 7873. The petition did not give a specific reason the Kellys were not liable for additions to tax for 2005. The case was assigned docket No. 11909-08. In its answer the IRS did not assert that the Kellys were liable for self-employment tax.

5.  <u>Trial</u>

The Court consolidated the four docketed cases for trial. In each case the parties executed a stipulation of facts. The Court hereby incorporates each stipulation of facts into its findings of fact, with the exceptions noted <u>infra</u> note 7.

OPINION

1.  <u>The Portions of the Compensation Received by Agripina Smith, Sandra Joseph, and Candace Kelly for Services as Members of the Tribal Council That Were Derived From the Fishing Rights-Related Activities of the Tribe</u>

Agripina Smith, Sandra Joseph, and Candace Kelly received compensation for their services as members of the tribal council. The Smiths, the Josephs, and the Kellys contend that the tribal-council compensation is totally exempt from federal income tax by the operation of section 7873.[7] In the deficiency notices, the

---

[7]Inadvertently, we think, the stipulations state that the three members of the tribal council received "taxable payments" that were exactly equal to the amounts that the IRS determined. For example, par. 17 of the stipulation in the 2004 and 2005 case of Agripina Smith and James Smith states: "In the tax year 2004, Agripina Smith received taxable payments for her services as a member of the Nooksack Tribal Council in the amount of $40,540.00" All six petitioners plainly challenge the IRS's determinations. We decline to adopt the portions of the stipulation that say otherwise. These portions are:

- Par. 14 of the stipulation in docket No. 11580-08 (the case involving the 2003 tax year of the Smiths),
- pars. 17 and 18 of the stipulation in docket No. 11607-08 (the case involving the 2004 and 2005 tax years of the Smiths).
- pars. 17 and 18 of the stipulation in docket No. 11614-08 (the case involving the Josephs), and
- pars. 23 and 24 of the stipulation in docket No. 11909-08

(continued...)

IRS determined that only small fractions of the payments (11.9 percent in 2003, 10.9 percent in 2004, and 9.7 percent in 2005) are excludable from income under section 7873.[8]

_____

[7](...continued)
(the case involving the Kellys).

For the same reason, we adopt par. 25 of the stipulation in docket No. 11909-08 without the words "in the amount of $20,543.00". We adopt par. 26 of the same stipulation without the words "in the amount of $20,543.00".

[8]Under sec. 1.6013-4(b), Income Tax Regs., if a joint return is made, the gross income of the husband and wife on the joint return is computed in the aggregate. The regulation provides: "If a joint return is made, the gross income and adjusted gross income of husband and wife on the joint return are computed in an aggregate amount and the deductions allowed and the taxable income are likewise computed on an aggregate basis." The regulation also provides: "Although there are two taxpayers on a joint return, there is only one taxable income. The tax on the joint return shall be computed on the aggregate income and the liability with respect to the tax shall be joint and several."

Joint income tax returns were filed by the Smiths for 2003, 2004, and 2005, by the Josephs for 2004 and 2005, and by the Kellys for 2004. For each of these years the aggregate income of each of the three couples must include the taxable portion of the tribal-council compensation received by the spouse who was a member of the tribal council (i.e., Agripina Smith, Sandra Joseph, and Candace Kelly). The deficiency notices determined that the aggregate income of each couple should exclude the portion of the tribal-council compensation that the IRS determined was derived from the fishing rights-related activities of the tribe (11.9 percent for 2003, 10.9 percent for 2004, and 9.7 percent for 2005).

The Kellys did not file a joint return for 2005. Although their incomes are not computed on an aggregate basis, they each earned a one-half share of community income. Thus, for 2005 Candace Kelly was required to include in her income one-half of her tribal-council compensation minus the amount excluded under sec. 7873. The deficiency notices issued to Candace Kelly for 2005 determined that 9.7 percent of the tribal-council

(continued...)

Section 7873(a)(1) provides that no income tax shall be imposed on income derived by a member of an Indian tribe from a fishing rights-related activity of such tribe.[9] The term "fishing rights-related activity" is defined as "any activity directly related to harvesting, processing, or transporting fish harvested in the exercise of a recognized fishing right of * * * [an Indian] tribe or to selling such fish but only if substantially all of such harvesting was performed by members of such tribe." Sec. 7873(b)(1). The term "recognized fishing rights" is defined by the Code to mean "fishing rights secured as of March 17, 1988, by a treaty between * * * [an Indian] tribe

---

[8](...continued)
compensation should be excluded from her income in computing her tax liability.

Likewise, for 2005 Edward Kelly was required to include in his income one-half of Candace Kelly's tribal-council compensation minus the amount excluded under sec. 7873. The deficiency notice sent to Edward Kelly for 2005 determined that 9.7 percent of Candace Kelly's tribal-council compensation should be excluded from Edward Kelly's income in computing his tax liability.

[9]Native Americans are United States citizens. Hoptowit v. Commissioner, 709 F.2d 564, 565 (9th Cir. 1983), affg. 78 T.C. 137 (1982). They are generally subject to federal income taxation unless exempted by a treaty or an Act of Congress. Id. The salaries received by members of tribal councils are generally subject to federal income taxation. Id. at 566. The Indian tribes themselves, like states, are generally exempt from federal income taxation. 1-8 Cohen's Handbook of Federal Indian Law, sec. 8.02[2][a] (Matthew Bender & Co. 2009).

and the United States or by an Executive order or an Act of Congress." Sec. 7873(b)(2).

The exact nature of the work of the Nooksack tribal council on salmon fishing issues is unclear in the record, as is the magnitude of the work in comparison to the council's other activities. The trial record does not even contain the minutes of the meetings of the council. The only concrete piece of relevant evidence is that the tribe spent 11.9 percent, 10.9 percent, and 9.7 percent of its budget on fishing expenses in 2003, 2004, and 2005. On the basis of these budget statistics, the IRS determined in the deficiency notice that 11.9 percent, 10.9 percent, and 9.7 percent of the compensation for services on the tribal council was derived from the fishing rights-related activities of the tribe. The preponderance of the evidence does not support a finding that the portion of the tribal-council compensation that was derived from fishing rights-related activities exceeded these percentages. Although the budget statistics for fishing activity may not have included the costs of ceremonies such as the annual salmon ceremony, we have no way of estimating what those costs were. The lack of information about the ceremonies (and about the council's activities generally) is the fault of the petitioners. Either they did not keep records of their activities, or they did not produce the records to the Court. We conclude that the portion of each

tribal-council member's compensation derived from the fishing rights-related activities of the tribe was 11.9 percent in 2003, 10.9 percent in 2004, and 9.7 percent in 2005.

2.  <u>Whether the Petitioners Are Liable for Self-Employment Tax on the Compensation Received by Agripina Smith in 2003, 2004, and 2005, by Sandra Joseph in 2004 and 2005, and by Candace Kelly in 2004 and 2005 for Services as Members of the Tribal Council</u>

Section 1401 imposes a tax on the "self-employment income" of every individual. "[S]elf-employment income" is generally defined as the "net earnings from self-employment derived by an individual". Sec. 1402(b). The term "net earnings from self-employment" is defined as "the gross income derived by an individual from any trade or business carried on by * * * [the] individual, less the deductions allowed by this subtitle [i.e. subtitle A of title 26] which are attributable to * * * [the] trade or business". Sec. 1402(a). A trade or business for these purposes excludes the performance of service by an individual as an employee. Sec. 1402(c)(2). In computing the gross income derived by an individual from a trade or business, if any of the income derived from a trade or business is community income under community property laws, the gross income and deductions attributable to such trade or business shall be treated as the gross income and deductions of the spouse carrying on such trade

or business.  Sec. 1402(a)(5)(A).[10]  Thus, if a wife runs a business that generates $20,000 in gross income, then, even if the $20,000 is community income, it is treated as the gross income of the wife, not the husband, in the calculation of the net earnings from self-employment.  See, e.g., <u>Landsberg v. Commissioner</u>, T.C. Memo. 2001-105 (husband who filed separate return was required to include 100 percent of income from his sales business in net earnings from self-employment even though income was community property under California law).  Net earnings from self-employment do not include income derived from fishing rights-related activity.  See sec. 1402(a)(15).

If a married couple files a joint return, the self-employment tax is computed separately for the husband and for the wife.[11]  Each spouse's self-employment tax liability is added to

---

[10]Sec. 1402(a)(5)(A) was effective Mar. 2, 2004.  Social Security Protection Act of 2004, Pub. L. 108-203, sec. 425(b), 118 Stat. 536.  Before that date, a similar provision was in effect.  Sec. 1402(a)(5)(A) (2002).

[11]As sec. 1.6017-1(b)(1), Income Tax Regs., provides:

In the case of a husband and wife filing a joint return under section 6013, the tax on self-employment income is computed on the separate self-employment income of each spouse, and not on the aggregate of the two amounts.  The requirement of section 6013(d)(3) that in the case of a joint return the tax is computed on the aggregate income of the spouses is not applicable with respect to the tax on self-employment income.

arrive at the couple's total self-employment tax liability.[12] The liability is joint and several.[13]

The IRS asks the Court to find that it "properly determined that petitioners are liable for self-employment tax on the taxable portion of the remuneration received by Agripina Smith, Sandra Joseph, and Candace Kelly for their services as members of the Nooksack Indian Tribal Council."

Agripina Smith received compensation for her tribal-council services during 2003, 2004, and 2005, Sandra Joseph received compensation for her tribal-council services during 2004 and 2005, and Candace Kelly received compensation for her tribal-council services for 2004 and 2005. For none of the years did any of petitioners report on tax returns any self-employment income attributable to the compensation received for services on the tribal council. In the deficiency notices it issued to petitioners for these years, the IRS did not determine any deficiency in self-employment tax attributable to tribal-council compensation. The IRS's answers in these cases do not assert

_____

[12]This Court observed in Charlton v. Commissioner, 114 T.C. 333, 337 (2000) (citing sec. 6017): "Self-employment tax for a husband and wife filing a joint return is the sum of the taxes computed on the self-employment income of each spouse."

[13]Sec. 6013(d)(3) imposes joint-and-several liability on spouses who file joint returns. Sec. 1.6017-1(b)(2), Income Tax Regs., explains: "Except as otherwise expressly provided, section 6013 is applicable to the return of the tax on self-employment income; therefore, the liability with respect to such tax in the case of a joint return is joint and several."

that the petitioners are liable for self-employment tax on tribal-council compensation. In its pretrial memoranda the IRS asserted that the tribal-council compensation paid to the three petitioners, except for the fraction the IRS determined was derived from fishing rights-related activities, was subject to self-employment tax.

The belatedness with which the IRS raised the issue of self-employment liability for the tribal-council compensation is a violation of Rule 31(a), which provides that the answer and other pleadings should give the other party fair notice of the matters in controversy. In Stewart v. Commissioner, 714 F.2d 977, 986 (9th Cir. 1983), affg. T.C. Memo. 1982-209, the Court of Appeals for the Ninth Circuit explained that the most appropriate times for the IRS to raise the legal theories on which it intends to rely are in the deficiency notice and in the answer. The failure of the IRS to raise a legal theory at these times does not cause the IRS to forfeit its right to rely on the theory if the taxpayer is not surprised and disadvantaged by the delay in raising the theory. Id. at 986-987. The petitioners would suffer prejudice from the belated raising of the issue of self-employment tax liability stemming from the tribal-council compensation. The issue does not hinge on the same factual questions as does petitioners' liability for income taxes

stemming from the tribal-council compensation. Therefore the IRS is barred from raising the issue.

We determine that none of petitioners are liable for self-employment tax on compensation received for services on the tribal council for the years at issue.

3. <u>Whether the IRS Properly Disallowed Vehicle Expense Deductions Claimed by James Smith and Agripina Smith for 2003, 2004, and 2005</u>

The deficiency notices determined that the deductions claimed by the Smiths in 2003, 2004, and 2005 for vehicle depreciation and maintenance and repairs should be disallowed. The IRS argues that the Smiths failed to assign error to these determinations. Rule 34(b)(4) requires the petition to contain clear assignments of each error that the petitioner alleges to have been committed by the Commissioner in the determination of the deficiency. If the petition fails to clearly assign error, the issue is deemed conceded. <u>Id.</u> We need not determine whether the Smiths conceded the vehicle-expense issue because, even if the Smiths were entitled to challenge the disallowance of the deduction, the IRS has shown that it was correct to disallow the deduction.

The expenses of operating a vehicle used in business are deducted from gross income. Sec. 162(a). Under section 1.274-5(j)(2), Income Tax Regs., a taxpayer can use the standard mileage rate to calculate the cost of using a vehicle in a

business instead of substantiating the actual cost.  Although it is permissible for a taxpayer to deduct the amount calculated from the standard mileage rate, it is not permissible to deduct such an amount and also the actual cost of operating the vehicle. See Larson v. Commissioner, T.C. Memo. 2008-187, 98 T.C.M. (CCH) 74, 77.

The Smiths used the standard mileage rate deductions.  For the same vehicles they also claimed deductions for depreciation, and for repairs and maintenance.  In the deficiency notices, the IRS allowed the Smiths only the standard mileage rate deductions, after making some corrections.  The corrections resulted in standard mileage rate deductions greater than the standard mileage rate deductions the Smiths claimed on their returns. Because the Smiths cannot deduct the expenses of their vehicles using both the standard mileage rates and the actual operating costs, and because the amounts of the standard mileage rate deductions in the deficiency notices exceed the actual operating costs claimed as deductions, we conclude that the amounts of the deductions reflected in the deficiency notices are the correct deductions for the vehicles the Smiths used in their tree-service business.

4.   <u>Whether Candace Kelly and Edward Kelly Are Each Liable for
     the Additions to Tax Under Section 6651(a)(1) and (2) for
     2005</u>

The deficiency notices determined that Candace Kelly and

Edward Kelly were each liable for an addition to tax for the

failure to file returns for 2005 and an addition to tax for the

failure to pay taxes shown on returns for 2005.  The IRS has

established that the Kellys are liable for these additions to

tax.  See sec. 7491(c) (imposing burden of production on IRS "in

any court proceeding with respect to the liability of any

individual for any penalty, addition to tax, or additional amount

imposed by this title").  And the Kellys have failed to show that

a statutory exception exonerates them from their liability for

the additions to tax.  There is evidence that the Kellys were

told by the lawyer for the tribe that Candace Kelly's tribal-

council compensation was exempt from income tax.  However, this

does not excuse the Kellys from filing a tax return.  Their

incomes, even without Candace Kelly's tribal-council income, were

above the threshold for filing tax returns. Therefore, whatever reliance they may have placed on the advice of the tribe's lawyer did not constitute reasonable cause for failing to file tax returns.[14]

To reflect the foregoing,

<u>Decisions will be entered under Rule 155</u>.

---

[14]The respondent objected to the admission of Exhibit 14-P, a memorandum from the tribe's lawyer. Because this memorandum does not affect our determinations, we need not decide whether it is admissible.