T.C. Memo. 2013-244

UNITED STATES TAX COURT

DONALD R. FITCH AND BRENDA T. FITCH, Petitioners <u>v.</u>
COMMISSIONER OF INTERNAL REVENUE, Respondent[*]

Docket Nos.    157-10, 27401-10,        Filed October 28, 2013.
               27417-10.

<u>Kevan P. McLaughlin</u> and <u>Richard A. Carpenter</u>, for petitioners.

<u>Michael S. Hensley</u>, for respondent.

_____

[*] This opinion supplements our prior Memorandum Opinion, <u>Fitch v.
Commissioner</u>, T.C. Memo. 2012-358 (<u>Fitch I</u>).

**[\*2]**                    SUPPLEMENTAL MEMORANDUM OPINION

VASQUEZ, <u>Judge</u>:  Petitioners and respondent filed computations for entry

of decision under Rule 155[1] in connection with our prior Memorandum Opinion,

<u>Fitch v. Commissioner</u>, T.C. Memo. 2012-358 (<u>Fitch I</u>).  The parties disagree over

the proper computation of petitioners' self-employment tax for 2005, 2006, and

2007 (years in issue).  Petitioners resided in California, a community property

State, during the years in issue.

Background

For purposes of this supplemental opinion, we incorporate our findings in

<u>Fitch I</u>.  For convenience and clarity, we repeat here the facts necessary to

understand the discussion that follows, and we supplement those facts as

appropriate.

I.      <u>Background on Petitioners</u>

During the years in issue Brenda T. Fitch was a licensed real estate agent

under California law and a member of the National Association of Realtors, the

California Association of Realtors, and the California Desert Association of

---

[1]  Unless otherwise stated, all section references are to the Internal Revenue
Code for the years in issue, and all Rule references are to the Tax Court Rules of
Practice and Procedure.

[*3] Realtors. She worked full time as an independent contractor with Remax (realty business), performing duties typical of real estate agents and brokers, including reviewing buyer criteria, soliciting listings, going on caravans,[2] and showing, leasing, and selling real property. Petitioners reported the income and expenses with respect to the realty business on a Schedule C, Profit or Loss From Business.

Donald R. Fitch was a certified public accountant (C.P.A.) in California. He owned and operated an accounting practice. He worked an average of about four hours each day in the accounting practice.[3] Petitioners reported the income and expenses with respect to the accounting practice on a second Schedule C.

Apart from their respective businesses, petitioners owned and managed eight rental properties. They chose to keep their properties separate. Mrs. Fitch owned three of the eight properties and Mr. Fitch owned five. They each performed the day-to-day tasks relating to their respective rental properties, although Mr. Fitch occasionally helped Mrs. Fitch with the advertising and repairs

---

[2] A caravan is typically a tour of newly listed properties designed for real estate agents and brokers.

[3] Mr. Fitch was recovering from a brain aneurysm that he suffered in 2003.

[*4] for two of her properties.[4] They reported the income and expenses with respect to the rental properties on a Schedule E, Supplemental Income and Loss.

II.   Rule 155 Computations

On March 22, 2013, respondent filed computations in connection with Fitch I (respondent's computations). Respondent separately computed Mrs. and Mr. Fitch's self-employment tax. Respondent determined that Mrs. Fitch had net income from self-employment with respect to the realty business of $12,498 for 2005, $2,366 for 2006, and $20,659 for 2007. Respondent computed Mrs. Fitch's self-employment tax to be $1,766 for 2005, $334 for 2006, and $2,919 for 2007. Respondent determined that Mr. Fitch had net losses from self-employment with respect to the accounting practice of $69,366 for 2005, $59,132 for 2006, and $64,652 for 2007. Respondent computed Mr. Fitch's self-employment tax to be zero for each of the years in issue. Respondent added Mrs. Fitch's self-employment tax and Mr. Fitch's self-employment tax to arrive at petitioners' self-employment tax of $1,766 for 2005, $334 for 2006, and $2,919 for 2007.[5]

---

[4] Petitioners also occasionally hired a contractor, such as an engineer or an electrician, to perform a technical task.

[5] Respondent also computed sec. 6662(a) accuracy-related penalties of $353.20 for 2005, $66.80 for 2006, and $583.80 for 2007.

**[\*5]**  On May 16, 2013, petitioners filed computations in connection with <u>Fitch I</u> and an objection to respondent's computations (petitioners' computations). Petitioners combined the net income with respect to the realty business with the net losses with respect to the accounting practice in computing their self-employment tax.  Petitioners determined that they had net losses from self-employment of $56,868 for 2005, $56,766 for 2006, and $43,993 for 2007.[6] Petitioners computed their self-employment tax to be zero for each of the years in issue.

On June 7, 2013, respondent filed a response to petitioners' computations (respondent's response), in which respondent objected to petitioners' computations and requested that the Court enter a decision in accordance with respondent's computations.  Petitioners' computations and respondent's response set forth the parties' arguments on the self-employment tax issue.  Neither party

---

[6]  Petitioners' computations of their net losses from self-employment are shown in the following table:

| Year | Realty business net income | | Accounting practice net losses | | Petitioners' computations |
|---|---|---|---|---|---|
| 2005 | $12,498 | + | ($69,366) | = | ($56,868) |
| 2006 | 2,366 | + | (59,132) | = | (56,766) |
| 2007 | 20,659 | + | (64,652) | = | (43,993) |

**[\*6]** has raised an objection under Rule 155(c), which prohibits raising new issues in a Rule 155 computation, and we decide this issue on the basis of the current record.[7]

Discussion

I.    Applicable Law

Section 1401 imposes a tax on the "self-employment income" of every individual. "[S]elf-employment income" is generally defined as the "net earnings from self-employment derived by an individual". Sec. 1402(b). The term "net earnings from self-employment" is generally defined as "the gross income derived by an individual from any trade or business carried on by * * * [the] individual, less the deductions allowed by this subtitle [i.e., subtitle A of title 26] which are attributable to * * * [the] trade or business". Sec. 1402(a); Eades v. Commissioner, 79 T.C. 985, 986 (1982).

In computing the gross income derived by an individual from a trade or business, if any of the income derived from the trade or business (other than a trade or business carried on by a partnership) is community income under community property laws, the gross income and deductions attributable to the

---

[7] In Fitch I, petitioners conceded some of the expenses they reported on the Schedule C related to the realty business, thus increasing the net income of the realty business (and the self-employment tax thereon).

**[*7]** trade or business are treated as the gross income and deductions of the spouse carrying on the trade or business. Sec. 1402(a)(5)(A). In Smith v. Commissioner, T.C. Memo. 2011-82, slip op. at 18, we stated by way of illustration that "if a wife runs a business that generates $20,000 in gross income, then, even if the $20,000 is community income, it is treated as the gross income of the wife, not the husband, in the calculation of the net earnings from self-employment." If the trade or business is jointly operated, then the gross income and deductions are treated as the gross income and deductions of each spouse on the basis of their respective distributive shares of the gross income and deductions. Sec. 1402(a)(5)(A).

If a married couple files a joint return, the self-employment tax is computed separately for the husband and for the wife. Sec. 6017; sec. 1.6017-1(b)(1), Income Tax Regs.[8] Each spouse's self-employment tax liability is added to arrive at the couple's total self-employment tax liability. Sec. 6017; sec. 1.6017-1(b)(1), Income Tax Regs. The liability is joint and several. Sec. 6013(d)(3).

---

[8] Sec. 1.6017-1(b)(1), Income Tax Regs., provides:

In the case of a husband and wife filing a joint return under section 6013, the tax on self-employment income is computed on the separate self-employment income of each spouse, and not on the aggregate of the two amounts. The requirement of section 6013(d)(3) that in the case of a joint return the tax is computed on the aggregate income of the spouses is not applicable with respect to the tax on self-employment income. * * *

**[\*8]** II.        Parties' Arguments

The parties agree that the net losses with respect to the accounting practice are attributable solely to Mr. Fitch for self-employment tax purposes.  Their dispute centers on the proper treatment of the net income with respect to the realty business.

Petitioners principally argue that the net income with respect to the realty business should be attributed solely to Mr. Fitch because Mrs. Fitch did not substantially manage and control the realty business.  They contend that Mr. Fitch "collaborated and contributed to the management and control of the * * * [realty business] in a multitude of ways".  They rely upon section 1402(a)(5)(A) and section 1.1402(a)-8(a), Income Tax Regs., as authority for the proposition that income derived from a business in a community property State is treated as that of the husband for self-employment tax purposes unless the wife exercised substantially all of the management and control of the business.  Petitioners alternatively argue that the net income with respect to the realty business should be attributed to each of them on the basis of their respective contributions to the realty business.[9]

_____

[9] Petitioners requested a hearing pursuant to Rule 155(b) to determine their respective contributions to the realty business.  For the reasons expressed in this

(continued...)

**[\*9]**  Respondent argues that the realty business was operated solely by Mrs. Fitch, and thus the net income therefrom must be attributed to her alone.  As to petitioners' principal argument, respondent argues that it rests upon "outdated material".  Respondent contends that section 1402(a)(5)(A) was amended by the Social Security Protection Act of 2004 (SSPA), Pub. L. No. 108-203, sec. 425(b), 118 Stat. at 536,[10] which had become effective by the years in issue, and that

---

[9](...continued)
opinion, we find that a hearing is not necessary to resolve the issue at hand.

[10]  Before its amendment by the Social Security Protection Act of 2004 (SSPA), Pub. L. No. 108-203, sec. 425(b), 118 Stat. at 536, sec. 1402(a)(5)(A) provided:

> (5) if--
>
>> (A) any of the income derived from a trade or business (other than a trade or business carried on by a partnership) is community income under community property laws applicable to such income, all of the gross income and deductions attributable to such trade or business shall be treated as the gross income and deductions of the husband unless the wife exercises substantially all of the management and control of such trade or business, in which case all of such gross income and deductions shall be treated as the gross income and deductions of the wife; * * *

The amendment to sec. 1402(a)(5)(A) by the SSPA became effective on March 2, 2004.

**[*10]** section 1.1402(a)-8(a), Income Tax Regs.,[11] had not been updated to reflect the amendment. Respondent further argues that, in any event, petitioners executed a prenuptial agreement, opting out of California's community property laws. As to petitioners' alternative argument, respondent contends that "[t]he record makes it abundantly clear that Brenda Fitch ran the * * * [realty business]" and hence the net income therefrom is attributable solely to her.

---

[11] Sec. 1.1402(a)-8(a), Income Tax Regs., provides:

(a) In case of an individual.--If any of the income derived by an individual from a trade or business (other than a trade or business carried on by a partnership) is community income under community property laws applicable to such income, all of the gross income, and the deductions attributable to such income, shall be treated as the gross income and deductions of the husband unless the wife exercises substantially all of the management and control of such trade or business, in which case all of such gross income and deductions shall be treated as the gross income and deductions of the wife. For the purpose of this special rule, the term "management and control" means management and control in fact, not the management and control imputed to the husband under the community property laws. For example, a wife who operates a beauty parlor without any appreciable collaboration on the part of her husband will be considered as having substantially all of the management and control of such business despite the provision of any community property law vesting in the husband the right of management and control of community property; and the income and deductions attributable to the operation of such beauty parlor will be considered the income and deductions of the wife.

**[\*11]** III.     Whose Business?

We first determine who operated the realty business.  The record is replete with evidence of Mrs. Fitch's involvement in the realty business.  She was a licensed real estate agent and a member of three professional real estate organizations during the years in issue.  Every morning she reviewed business emails, new real estate listings, and buyer criteria for clients.  She showed properties to clients and went on caravans to view new properties that were listed with Remax.  And although Mr. Fitch was a C.P.A., she also kept and maintained the realty business' accounting records.

On the other hand, petitioners have not shown what involvement, if any, Mr. Fitch had in the realty business.  Petitioners argue that Mr. Fitch designed and hosted its principal Web site, set up and maintained its Quicken financial software and contact management system, presented documents to various real estate sellers, and changed locks on various properties, among other things.  However, petitioners have not cited to any evidence of these activities in the record, nor can we find any.[12]  Furthermore, Mr. Fitch testified that Mrs. Fitch was the one who maintained the realty business' Quicken records for bank accounts.

---

[12]  We believe petitioners may have confused the realty business with their rental properties.

**[\*12]** In <u>Heinbockel v. Commissioner</u>, T.C. Memo. 2013-125, at \*47, we found that the income from a business called "Lydia's World" had to be attributed to Lydia, the taxpayer wife, for self-employment tax purposes. In that case the record was replete with evidence of activities that Lydia had performed with respect to Lydia's World, and her testimony at trial was threaded throughout with references to Lydia's World as her business. Similarly, in this case petitioners referred in their testimony to the realty business as Mrs. Fitch's business. Mr. Fitch testified that when he and Mrs. Fitch dined together, they would talk about "<u>her</u> business".[13] (Emphasis added.) He further testified that "she's running <u>her</u> business as a real estate professional. I'm running <u>my</u> business as a CPA". (Emphasis added.) Mrs. Fitch testified that "[i]n terms of my software within <u>my</u> real estate business, every day I'm alerted to brand new listings that come on the market." (Emphasis added.)

On the basis of the foregoing, we find that the realty business was not jointly operated. We find that Mrs. Fitch, and not Mr. Fitch, operated the realty business.

---

[13] Contrary to petitioners' assertions in their computations, the fact that they discussed their respective businesses over meals does not establish that Mr. Fitch played a role in operating the realty business.

**[*13]** IV.     Self-Employment Tax Computation

Because Mrs. Fitch operated the realty business, the net income therefrom must be attributed solely to her for self-employment tax purposes. See sec. 1402(a)(5)(A).  We need not address whether petitioners' reliance on section 1.1402(a)-8(a), Income Tax Regs.,[14] in their principal argument is misplaced because under that regulation the net income with respect to the realty business would also be treated as Mrs. Fitch's because she substantially managed and controlled the realty business.  We likewise need not address respondent's argument that petitioners opted out of California's community property laws.

Petitioners must separately compute the self-employment tax for Mrs. and Mr. Fitch.  See sec. 6017; sec. 1.6017-1(b)(1), Income Tax Regs.  They may not combine the net income with respect to the realty business, which is allocable to Mrs. Fitch, with the net losses with respect to the accounting practice, which are allocable to Mr. Fitch.  See sec. 6017; sec. 1.6017-1(b)(1), Income Tax Regs.

In reaching our holdings herein, we have considered all arguments made, and, to the extent not mentioned above, we conclude they are moot, irrelevant, or without merit.

---

[14] Sec. 1.1402(a)-8(a), Income Tax Regs., closely follows the language of sec. 1402(a)(5)(A) before its amendment by the SSPA.

**[*14]**  To reflect the foregoing,

<u>Decisions will be entered
in accordance with respondent's
computations</u>.